# Commonwealth ex rel., Appellant, *v.* Langley.

*Elections—Public officers—Municipalities—Cities of the third class— Constitutional amendments of 1909—Acts of May 23, 1889, P. L. 277, and June 21, 1911, P. L. 1102.*

1. The officers of a borough which had been granted letters patent as a city of the third class, but which had not, at the date of the passage of the Act of June 21, 1911, L. P. 1102, elected the officers appropriate to the city government, hold their offices until the first Monday of December, 1913, under sec. 3, art. I of the Act of May 23, 1889, P. L. 277, as amended by the Act of June 21, 1911, P. L. 1102, which provides that the officers of such a borough shall "hold their respective offices until the first Monday in December of the first odd-numbered year next

succeeding the issuing of·letters patent to the said city, at which time the officers of said city chosen at the preceding municipal election shall enter upon their respective terms of service, and the city government shall be duly organized."

2. The plain words of the amended third section of art. I of the act of 1889 do not create a borough which has received letters patent at once into a full-fledged city of the third class.  From the date of the letters it becomes an embryonic city, but its full development into a city of the third class does not take place until the new municipal officers chosen at a municipal election shall enter upon their respective terms and organize the city government.

3. Section 2 of art. VI of the Act of May 23, 1889, P. L. 277, as amended by sec. 6 of the Act of June 21, 1911, P. L. 1102, applies to existing cities of the third class, and not to boroughs which are in the course of transformation into cities.

4. The words "next succeeding" as used in sec. 1 of the act of 1911, amending sec. 3 of art. I of the act of 1889, are not to be construed as qualifying the word "December," but are to be construed as qualifying the words "the first odd-numbered year."

Argued Oct. 12, 1911.   Appeal, No. 259, Jan. T., 1911, by petitioner, from order of C. P. Fayette Co., Dec. T., 1911, No. 175, refusing writ of mandamus in case of Commonwealth ex rel. William A. Bishop v. John S. Langley et al., Commissioners of Fayette County.   Before FELL, C. J., BROWN, MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ.   Affirmed.

Petition for mandamus.   Before VAN SWEARINGEN, J.

The petition averred that the petitioner was a resident and citizen of the fifth ward of what was formerly the borough of Connellsville, now the city of Connellsville; that on May 12, 1911, the governor by letters patent had created the borough of Connellsville a city of the third class; that the petitioner had tendered to the defendants a proper nomination paper as a candidate for the office of select councilman of the fifth ward of the city of Connellsville and that such paper had been refused, and that the commissioners had also refused to print the name of the petitioner as a candidate.   It was further averred that the act of June 21, 1911, provided for the election of city

officers in the city of Connellsville at the municipal election in November, 1911.   The court dismissed the petition.

*Error assigned* was the order of the court.

*E. C. Higbee,* of *Sterling, Higbee & Matthews,* with him *D. M. Hertzog,* for appellant.—The charter may be in abeyance for every other purpose, but for the purpose of electing officers it is in full force and effect: Com. v. McGroarty, 148 Pa. 606.

Connellsville having received letters patent on May 12, 1911, is not within the provisions of sec. 1 of the act of 1911.   The city of Connellsville at the date of the passage of the act of June 21, 1911, had the right under existing law to elect city officers at the municipal election of 1911, and appellant confidently submits that this act did not destroy that existing right.

*Wm. M. Fausset,* with him *C. E. Berger,* for interveners.—It is the policy of the law of this state that public officials both state and local, be elected at fixed times for definite terms, and that they should assume the duties and exercise the powers of their respective offices within a short time after their election, so that state and local governments will be established on a systematic and orderly basis.   And especially, that they may operate without jar or friction, and that no interregnums shall occur. The words, "next succeeding," and the words, "next preceding," are found in the act of June 21, 1911.   The words, "next succeeding," appear in the old and new sec. 3, of art. I, sec. 5, art. III, and sec. 16, art. IV.   The words, "next preceding," appear in the old and new sec. 16, art. IV.

An examination and analysis of these sections will show that, in every instance, in both old and new sections, the words, "next succeeding," and the words, "next preceding," qualify the name of a month.

*R. F. Hopwood,* for appellees.

OPINION BY MR. JUSTICE BROWN, October 17, 1911:

After it appeared from the last United States census that the borough of Connellsville had a population in excess of 10,000, it took the steps made necessary by the Act of May 23, 1889, P. L. 277, to become a city of the third class, and, on May 12, 1911, letters patent were issued to it under that act, constituting it the city of Connellsville. But for the amendments to the constitution which were adopted in 1909 and the Act of June 21, 1911, P. L. 1102, passed in view of them, the terms of all councilmen in the borough of Connellsville would have continued under the act of 1889 until the first Monday in April, 1912, and their successors, as members of the city councils, would have been elected on the first Tuesday in February of that year. All this was changed by the constitutional amendments, and the legislature of 1911 was confronted with the duty and necessity of amending the act of 1889. Section 3, art. I, of that act provided that, "all the property and estates whatsoever, real and personal, of the towns or boroughs which shall have thus become a city of the third class, are hereby severally and respectively vested in the corporation or body politic of said city, by the name, style and title given thereto as aforesaid, and for the use and benefit of the citizens thereof forever; and the charters of the said towns or boroughs shall continue in full force and operation, and all officers under the same shall hold their respective offices, until the first Monday of April following the third Tuesday of February next succeeding the issuing of letters patent to the said city, at which time the officers of said city chosen at the preceding municipal election shall enter upon their respective terms of service, and the city government shall be duly organized under this act." The foregoing section was amended by the act of 1911, and there is now in it the following substitutionary provision: "The charters of the said towns or boroughs shall continue in full force and operation, and all officers under the same hold their respective offices until the first Monday of December of the first odd-

numbered year next succeeding the issuing of letters patent to the said city, at which time the officers of said city chosen at the preceding municipal election shall enter upon their respective terms of service, and the city government shall be duly organized." The very narrow question before us, as we regard it, is whether those holding offices in the borough of Connellsville at the time the letters patent were issued constituting it a city of the third class, shall continue to hold those offices until the first Monday in December, 1913. If they are to continue to hold them until that time their successors must be elected at the November election of that year, and the appellant's petition was properly dismissed by the court below.

It is to be noted from the plain words of the amended third section of art. I of the act of 1889, that the issuing of letters patent authorizing a borough to become a city of the third class does not at once create it a full-fledged city of that class. From the date of the letters it becomes an embryonic city, but its full development into a city of the third class does not take place until the new municipal officers chosen at a municipal election shall enter upon their respective terms and organize the city government. When the act of 1911 was passed the city of Connellsville was in a formative process. It had not yet become a city authorized to manage its own affairs. True, it had become a city of the third class in the sense that letters patent had issued to it under the second section of art. I of the act of 1889, but the charter of the borough was still supreme within the municipal limits, and, the borough not having been a city in fact at the time of the passage of the act of 1911, and not having been able to become so until provision was made for the election of city officers at a municipal election in an odd-numbered year, as the legislature might direct, it must be regarded as within the provisions of the act of 1911. And what are the provisions of the act relating to the terms of the councilmen of the borough of Connellsville? They shall

"hold their respective offices until the first Monday of December of the first odd-numbered year next succeeding the issuing of letters patent to the said city, at which time the officers of said city chosen at the preceding municipal election shall enter upon their respective terms of service, and the city government shall be duly organized under this act." Councilmen of the borough are to hold their offices until the first Monday in a certain December, designated by the act as December of the first odd-numbered year next succeeding the issuing of letters patent to the said city. He who runs must so read the amended third section of art. I of the act of May 23, 1889, and, unless there be some other provision in the act of 1911 clouding the clear intention of the legislature, it must be given effect. Nothing is to be found in any other part of the act which would justify a disregard of the legislative intent so clearly expressed.

Section 2 of art. VI of the act of 1889 as amended by the act of 1911 relates to existing cities of the third class—those fully developed and actually operating as cities of that class. It speaks of "mayors, city controllers, city treasurers," and members of select and common council "now in office." A borough about to become a city has no such officers. As to this we quite agree with the following conclusion of the learned judge below: "A careful reading of both sections convinces us that section 6 is not applicable to this case. It is to be noticed that sec. 3 of art. I of the act of 1889, and sec. 1 of the act of 1911, pertain particularly to cases where towns or boroughs are in the course of transformation into cities, while sec. 2 of art. VI of the act of 1889, and sec. 6 of the act of 1911, relate to elections and terms of office in cities of the third class generally, without special reference to cities in the course of erection as such from towns or boroughs. There are many cities of the third class in Pennsylvania other than those incorporated under the act of 1889. The mind of the legislature in the consideration of sec. 6 of the act of 1911 evidently was riveted on cities of the third class then

having city officers, while in the consideration of sec. 1 of that act the legislature had in mind cities of the third class in the course of development from towns or boroughs. Most of the provisions of sec. 6 relate to the terms of those holding offices in cities of the third class at the time of the passage of the act. The point is that Connellsville, in its present status, is not a city of the third class within the meaning of sec. 6 of the act of 1911, not yet having elected municipal officers under its charter as a third class city and organized a city government. . . . In other words, the city in name becomes a city in fact, under sec. 1 of the act of 1911, when its charter actually goes into operation, upon the election and entry upon their respective terms of service of the city officers and the organization of the city government. It may seem unreasonable that the election of city officers and the organization of a city government under the city charter shall be postponed for more than two years after the granting of the letters patent, but that is the effect in this case of what the legislature has enacted, and by that enactment the courts are bound. If sec. 3 of art. I of the act of 1889 were still in force, city officers in Connellsville would not be elected until February, 1912, and the city government would not be organized until April of that year. The purpose of the act of 1911 was to amend the act of 1889 so as to conform with the constitutional amendments of 1909."

On the argument upon this appeal, counsel from the county of Schuylkill, interested in sustaining it, were heard as interveners. With much earnestness they contended that the words "next succeeding" qualify "December," and not "the first odd-numbered year," and insist that "the phrase: 'the first Monday of December of the first odd-numbered year next succeeding the issuing of letters patent' means the same thing as 'the first Monday of December following the first municipal election succeeding the issuing of letters patent.'" The unambiguous words of the act of 1911 are not to be so read. It was first insisted by the interveners that their construc-

tion of the act of 1911 should prevail, because it is the policy of the state that public officials, both state and local, shall assume the duties and exercise the powers of their respective offices a short time after their election; but in making this contention they entirely overlooked the fact that if, immediately after a municipal election in an odd-numbered year, letters patent should issue to a borough constituting it a city of the third class, the city officials concededly could not be elected for two years— until the municipal election in the next odd-numbered year.

We dismiss this appeal because to sustain it would be to do violence to the intention of the legislature as expressed in an act which it was duly authorized to pass. If the legislation of 1911 is unwise the legislature alone can correct it. The duty of courts is to enforce constitutional legislation. They have nothing to do with the wisdom of it. That is entirely for the legislature. The appeal is dismissed because the words of the first section of the act of 1911 have but one meaning.

Appeal dismissed with costs.